**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| MONIQUE CECILIA DAVIS,                    ) | |
|                           Plaintiff,      ) | |
|              v.                           ) | |
|                                           )     Case No. 20-cv-2282 (CKK) | |
| KILOLO KIJAKAZI,                          ) | |
| Acting Commissioner of                    ) | |
| the Social Security Administration,       ) | |
|                                           ) | |
|                           Defendant.      ) | |
| _____ ) | |

**MEMORANDUM OPINION**
(August 24, 2022)

This Social Security matter is before the Court on Plaintiff's [16] Motion for Judgment of Reversal and Defendant's [17] Motion for Judgment of Affirmance.  Plaintiff asks the Court to vacate the Social Security Administration's ("SSA") November 25, 2019 Decision ("Decision") denying Plaintiff's application for benefits and remand with instructions to award benefits. Because the Decision is not supported by substantial evidence, and upon consideration of the briefing, [1] the relevant legal authority, and the entire record, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's [16] Motion for Judgment of Reversal, **DENIES** Defendant's [17]

---

[1] The Court's consideration has focused on the following briefing and materials submitted by the parties:
- Plaintiff's Memorandum in Support of Her Motion for Reversal of Judgment ("Pl.'s Mot."), ECF No. 16-1;
- Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Def.'s Mot."), ECF No. 17;
- Plaintiff's Reply Memorandum ("Pl.'s Repl."), ECF No. 19; and
- The Administrative Record, ("AR"), ECF Nos. 13-1 _et seq._

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. _See_ LCvR 7(f).

Motion for Judgment of Affirmance, and **REMANDS** this matter to SSA for reconsideration in light of this Memorandum Opinion.

## I.    BACKGROUND

Plaintiff, who resides in Washington, DC, received her first diagnosis of relapsing, remitting multiple sclerosis ("MS") in early 2013.  *See* AR at 36.  At that time, Plaintiff had recently graduated from college, earning a degree in recreation park tourism management.  *Id.* at 39.  Plaintiff testified that she first noticed the consequences of her MS while in college, but that symptoms took a serious turn for the worse in late 2016.  *Id.* at 36.  By late 2017, medical tests showed "black hole lesions" in her brain, *id.* at 555, that necessitated a course of debilitating drugs, *id.* at 299, 303.  Among other symptoms, Plaintiff complained of limited mobility on the left side of her body, *id.* at 42, 557, a "spastic gait" that required a prescription cane, *id.* at 571-72, bladder issues and feelings of urinary urgency, *id.* at 17, chronic fatigue and sleep apnea, *id.* at 44, and issues with short term memory and understanding work-related tasks, *id.* at 18, 546.  Nevertheless, Plaintiff testified that she had good relationships with family and friends and engaged in several hobbies and social activities.  *Id.* at 55.

As to urinary urgency specifically, Plaintiff appears to have first complained of urinary symptoms in March 2017.  *Id.* at 614.  These were minor; Plaintiff stated that "she has to wait[] 2-3 seconds before urine start[s] flowing."  *Id.*  In March 2019, Plaintiff reported that these symptoms substantially worsened.  *Id.* at 608.  Shortly after her January 2019 appointment with her primary doctor, Plaintiff began to experience a "sense of incomplete emptying with the need to 'push' or strain in order to empty her bladder."  *Id.*  The treating physician stated Plaintiff said that she "could occasionally 'calm it down' but that she still needs to find a bathroom fairly quickly."  *Id.*;

Case 1:20-cv-02282-CKK   Document 25   Filed 08/24/22   Page 3 of 12


*see also id.* at 540 (August 16, 2017 treatment notes with psychologist).  Plaintiff testified in the administrative hearing that she needed ten-to-fifteen-bathroom breaks per day.  *Id.* at 55.

During the period of time her symptoms worsened, beginning approximately in late 2016, Plaintiff worked as a "Recreation Assistant" for Arlington County, Virginia, her last gainful employment.  *Id.* at 176.  At this time, the job was "accommodated;" it reduced Plaintiff's responsibilities in light of her disability.  *See id.* at 176.  Based on her disability, Plaintiff's supervisor complained that Plaintiff could not "complete all the usual duties required for an [unaccommodated]" Recreation Assistant, was "frequently absent from work," and did not complete her "work in the same amount of time as employees in similar positions." *Id.* at 176-77. Compared to "other employees in similar positions and similar pay rates," Plaintiff's supervisor noted that Plaintiff's disability reduced her productivity to less than "50%" normal.  *Id.* at 177.  It appears from the record that there were no reasonable accommodations to sustain Plaintiff's employment in that clerical, office role.  *See id.*

Because her MS symptoms impeded her ability to work, Plaintiff filed a claim for disability insurance benefits on December 6, 2016.  *Id.* at 14.  Her claim was initially denied on August 25, 2017, and SSA denied it again upon reconsideration on February 25, 2018.  The SSA Administrative Law Judge, Thomas J. Sanzi, ("ALJ") held an appellate hearing via videoconference on July 10, 2019, and heard testimony from a vocational expert, Suman Srinivasan.  The vocational expert testified, among other things, that there would be no qualified work for Plaintiff if the ALJ were to find:  (1) that Plaintiff "is only able to engage in sustained work activity on a regular and continuing basis for four hours per day," or (2) that Plaintiff "would be absent from work two days per month regularly," or (3) that Plaintiff "would be off task 15% of the work period in addition[] to regularly-scheduled breaks." *Id.* at 62-63.

3

In his Decision, the ALJ credited little of Plaintiff's testimony. Although the ALJ found Plaintiff's MS to be a qualifying disability, he considered the symptoms of Plaintiff's MS minor. He did not credit Plaintiff's testimony regarding urinary frequency because, he concluded, "there is no mention [in the record] that her urinary problems required her to take [up to 15] daily breaks." *Id.* at 17. Although Plaintiff's treating physician noted neurocognitive symptoms arising from MS, the ALJ found these symptoms "mild" because Plaintiff has "good relationships with family and friends and engage[s] in several hobbies and social activities." *Id.* at 18. The ALJ further considered Plaintiff's testimony regarding the "intensity, persistence, and limiting effects" of the totality of her physical and mental symptoms to be "inconsistent with the objective medical evidence." *Id.* at 20. The ALJ noted that some of her testimony contradicted treatment notes when she, at the time of the medical appointment, described her cognitive and physical symptoms as less severe than during the oral hearing. *Id.* The ALJ also found it significant that a treating physician surmised, at one point, that the urinary symptoms might be related to something other than MS. *Id.* That same treating physician found that the urinary symptoms were, in fact, related to MS. *See id.* at 594.

The ALJ also did not credit Plaintiff's treating physician's report prepared for the oral hearing. *Id.* at 22. Although that report broadly corroborates her treatment notes in much of the medical record, the ALJ thought the report deficient because it did not explicitly "make function by function assessments about the claimant's abilities." *Id.* The report, consisting mostly of checkboxes, found that Plaintiff's medical condition caused "[m]arked restriction of activities in daily living," "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner," and "[r]epeated episodes of deterioration or decompensation in work or work-like" conduct. *Id.* at 594. Evidently because Plaintiff's "appointments with her

physicians were regular but not frequent," the ALJ concluded that "*nothing* in the record []
indicate[s] that [MS] flares would cause regular and[/or] monthly absences from work." *Id.* at 22
(emphasis added).

The ALJ also gave less weight to a report by a treating psychologist who found, in one
visit, grave consequences from Plaintiff's neurocognitive difficulties. *See id.* at 547. The report
found that her "evident cognitive deficits can be significantly associated with frustrated and
truncated behavioral outcomes." *Id.* It further concluded that her "cognitive deficits and []
fatigue" caused "moderate limit[ation]" in "[u]sing reason and judgment to make work-related
decisions" and "marked limit[ation]" in "understand[ing], remember[ing], and apply[ing] complex
directions and instructions." *Id.* at 546. Altogether, the report found that Plaintiff's "cognitive
problems" "may significantly interfere with the [Plaintiff's] ability to function on a daily basis,"
so much so that she "will need assistance to manage her funds due to cognitive deficits." *Id.* at
546-47. Because, the ALJ reasoned, "there are only limited instances of problems with her
cognitive functioning and memory problems in the treatment record," he could "not find up to
marked limitations in mental heath domains simply based on a one-time cognitive test by the
consultative examiner." *Id.* at 22.

Evidently because other portions of the record *do* recount fatigue and cognitive problems,
the ALJ decided that the report should instead stand for the proposition that Plaintiff has some,
merely minor cognitive problems. Accordingly, the ALJ found that there were some sedentary,
unskilled jobs available to Plaintiff. *Id.* at 23. The present action followed. With dispositive
motions fully briefed, this matter is ripe for resolution.

## II.    LEGAL STANDARD

Judicial review of an administrative order denying disability benefits is limited to determining whether the Commissioner applied the correct standard and whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g).  The standard for substantial evidentiary sufficiency "is not high" but instead is "more than a mere scintilla," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).  The court may not substitute its own judgment over that of the Commissioner.  *Chevalier v. Shalala*, 874 F. Supp. 2, 3 (D.D.C. 1994) (citing *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)).  Generally, where "the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  Remand is appropriate in any case where an "ALJ could still find that substantial evidence does not support a finding of disability."  *Workman v. Colvin*, 204 F. Supp. 3d 1, 5 (D.D.C. 2016).

A remand solely for the award of disability benefits is an extraordinary remedy that is appropriate if "the evidence on the record as a whole is clearly indicative of disability and additional hearings would serve no purpose other than to delay the inevitable receipt of benefits[.]" *Espinosa v. Colvin*, 963 F. Supp. 2d 25, 35-36 (D.D.C. 2013) (quoting *Hawkins v. Massanari*, No. 00-2102. 2002 WL 379898, at *4 (D.D.C. Mar. 8, 2002).  When courts have granted an immediate award of benefits, they have stated that "it would be virtually impossible for [the ALJ] to find against [the] plaintiff upon remand."  *Lockhard v. Apfel*, 175 F. Supp. 2d 28, 34 (D.D.C. 2001);

*see Perkins v. Berryhill*, 379 F. Supp. 3d 1, 8 (D.D.C. 2019) (the standard for reversing a Commissioner's decision and ordering an immediate award of benefits presents a "high bar").

## III.  DISCUSSION

To meet the disability standard here, Plaintiff was required to prove:

> [an] inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(2)(A).  Plaintiff was further required to show that she had a physical or mental impairment of such severity that:

> She is not only unable to do her previous work but cannot considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.

*Id.* (cleaned up).

To determine whether a claimant is disabled, the ALJ follows the following five-step process, in order:  (1) whether the claimant has worked during the alleged period of disability, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in the regulations and is considered *per se* disabling, (4) whether the claimant can return to her past relevant work, and (5) whether the claimant can perform other work.  20 C.F.R. § 404.1520.  If an affirmative decision can be reached at any stage in this sequential process, further evaluation is unnecessary.  *Id.* § 404.1520(a).

After reviewing the evidence, the ALJ found at step three that Plaintiff's symptoms do not rise to the listing level.  AR at 17.  Continuing to the following steps, the ALJ found that, although Plaintiff's symptoms prevent her from engaging in past work, there are unskilled, sedentary jobs she is capable of performing notwithstanding her symptoms.  *Id.* at 19-21.  Because the ALJ did

not sufficiently address contravening evidence or give the opinion of Plaintiff's treating physician sufficient weight as a matter of law, the ALJ's decision is not supported by substantial evidence.

To determine whether Plaintiff has a "medically determinable physical or mental impairment," the record is actually quite limited.  Unlike the analysis at step 4, at step 2, the ALJ, and thus this reviewing court, is barred from considering the claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."  20 C.F.R. § 404.1521.  As such, Plaintiff's testimony is irrelevant to this inquiry at this step.  So too, however, is much of the treatment record.  This is so because the vast majority of the treatment record memorializes *Plaintiff*'s statements to treating physicians about the existence and severity of symptoms.  The existence of certain symptoms, therefore, is limited to their mere diagnosis in the treatment record and any discussion of them by treating physicians.  Insofar as the ALJ relied on Plaintiff's testimony to conclude that the urinary frequency was not a qualifying impairment, the ALJ applied the wrong standard.

What is left, then, is Plaintiff's treating physician's (1) 2017 diagnosis of urinary frequency that may or may not be related to MS, (2) March 2019 notation that the worsening urinary urgency may or may not be related to MS, and (3) 2019 form conclusion that her urinary urgency was related to MS and debilitating.  Plaintiff's treating physician evidently changed his opinion in the subsequent report, but the medical record supports, in multiple entries, Plaintiff's complaints regarding urinary frequency and her physician's conclusion that her urinary frequency was related to her MS and disabling.   Per the "treating physician rule," "when a claimant's treating physician has great familiarity with her condition, his reports must be accorded substantial weight . . . unless contradicted by substantial evidence."  *Holland v. Berryhill*, 273 F. Supp. 3d 55, 63 (D.D.C. 2017) (cleaned up); *see also Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009) (ALJ may only

disregard treating physician's opinion if it is contradicted in the record or if it is "'brief, conclusory, and inadequately supported by clinical findings'" (emphasis added) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  The ALJ may rely on a variety of factors to deny a treating physician's opinion great weight, including the "supportability of the treating physician's opinion by medical sources" and the "consistency of the opinion with the record as a whole."  *Porter v. Colvin*, 951 F. Supp. 2d 125, 123 (D.D.C. 2013).  True, the ALJ's offered some relevant reasoning insofar as he cited to other portions of the record and viewed the 2019 report is quite short.  Without any *contravening* evidence, however, the treating physician's opinion is otherwise due great weight.

Defendant's misplaced reliance on *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90 (3d Cir. 2004) explains this problem.  In that case, which is not binding on this Court, the United States Court of Appeals for the Third Circuit noted that, as a general matter, an ALJ may note the absence of certain key documents in the record in denying a request for benefits.  *Id.* at 95.  There, however, the complainant had *no* medical evidence in the record supporting the complainant's alleged severity of her medical symptoms (pain associated with endometriosis).  *Id.* at 95-96.  To the contrary, physicians consistently concluded that she was overstating her pain symptoms in order to receive narcotic analgesics.  *Id.* at 96.  Here, the record contains a report from her treating physician assessing her symptoms as disabling.  AR at 595.  Moreover, no medical record contradicts Plaintiff's statements about the severity of her urinary urgency as corroborated by her treating physician.  The ALJ may not find the absence of *further* corroborating medical evidence to be the evidence of absence.

Defendant, and the ALJ, are nevertheless correct that the medical discussion of Plaintiff's urinary urgency is relatively sparse.  The record consists of some statements by Plaintiff to her

treating physicians, a note by one treating physician that the urinary urgency might not be related to MS, and a subsequent form "Multiple Sclerosis Evaluation."  This form consists predominantly of "yes or no" checkboxes and does not provide space for longer analysis or explanation.  Although no court of this jurisdiction has addressed the issue, other federal Courts of Appeals have concluded that an ALJ may disregard such check-box forms as overly conclusory.  *See, e.g.*, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  But the paucity of evidence, without anything to contravene it, is not itself sufficient to deny the claim here.  The regulations provide for just such a situation.  Where "the evidence is consistent but [the ALJ does not] have [] sufficient evidence to determine whether [a claimant] is disabled," the ALJ may:  (1) "recontact [the claimant's] medical source," (2) "request additional existing evidence," (3) "ask [claimant] to undergo a consultative examination," and/or 9(4) "ask [the claimant] or others for more information."  20 C.F.R. § 404.1520b(b)(2)(i)-(iv).  Upon reconsideration, Defendant could take any of these courses of action in determining whether Plaintiff's urinary urgency renders her disabled.

　　　　As to Plaintiff's remaining symptoms, Defendant is correct that there is conflicting evidence in the record.  Although Plaintiff's treating physician checked boxes indicating more severe neurocognitive issues, the consultative examiner concluded Plaintiff has only "mildly impaired memory skills" and "moderate limitations in using judgment and reason to make work-related decisions."  AR at 546.  The ALJ correctly concluded that there is "very little evidence in the claimant's treatment record of cognitive problems and mention of extreme fatigue" that would impact Plaintiff's ability to work.  *See id.* at 22.  The ALJ did not consider, however, the report prepared by Plaintiff's supervisor at her final job.  This report, completed on a form provided by the Social Security Administration, concluded that Plaintiff was not capable of working in an unaccommodated, sedentary position consisting mostly of clerical duties.  *See id.* at 177.  It found

that Plaintiff's productivity was "50% or less than other employees' productivity" because she required "more breaks/rest periods," "frequent absences," "lower production standards," and "extra help/supervision." *Id.* at 176-77.  Indeed, Plaintiff only worked approximately twenty hours per week and still could not complete her clerical, sedentary duties efficiently.  *See id.* at 176.  This report broadly corroborates Plaintiff's account of her symptoms, including fatigue, memory issues, attention issues, and urinary urgency.  Because it is not clear whether the ALJ "rejected" or "ignored" this contradictory evidence, the ALJ's residual function analysis is not supported by substantial evidence.  *See Butler*, 353 F.3d at 278.

Moreover, this report is potentially dispositive.  Plaintiff's claim ultimately turns on whether Plaintiff is capable of performing unskilled, sedentary work.  *See* AR at 23.  The vocational expert, whom the ALJ credited, testified that a person "who would be off task 15% of the work period in addition[] to regularly-scheduled breaks" would not qualify for competitive work.  *Id.* at 62.  Nor would a person absent "from work two days per month regularly" qualify for competitive work.  Plaintiff's prior work experience supports a finding that Plaintiff's MS would require her to take frequent breaks and frequently miss work and corroborates her treating physician's opinion to that effect.  As such, upon considering this report, the ALJ could conclude that Plaintiff is, in fact, disabled.

Accordingly, the Court shall remand this matter to the ALJ for reconsideration in light of this Memorandum Opinion.  As noted above, generally a court must find that "it would be virtually impossible for [the ALJ] to find against [the] plaintiff upon remand" in order to grant an immediate award of benefits.  *Apfel*, 175 F. Supp. 2d at 34.  Here, as to urinary urgency, "the administrative record [may be[] [further] developed [with] new facts [] explored on remand."  *See Ademakinwa v. Astrue,* 696 F. Supp. 2d 107, 112 (D.D.C. 2010) (cleaned up).  Similarly, as to the severity of

Plaintiff's remaining symptoms, the ALJ may opt not to credit the employer report, or not, in the record.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's [16] Motion for Judgment of Reversal, **DENIES** Defendant's [17] Motion for Judgment of Affirmance, and **REMANDS** this matter to SSA for reconsideration in light of this Memorandum Opinion.  An appropriate order accompanies this Memorandum Opinion.


Dated: August 24, 2022                          _____/s/_____
                                                COLLEEN KOLLAR-KOTELLY
                                                United States District Judge